burden to demonstrate under what circumstances our nation's history and tradition allowed for disarmament, and then that the individual they are seeking to disarm actually fits within those circumstances. In other words, here the government needed to prove a tradition of founding-era disarmament or otherwise serious or permanent punishment for certain predicate felony convictions, and then that Mr. Schnur fit within those convictions. And here it And this is an issue that does interest me, because I agree the Supreme Court has said the government bears the burden. That issue was in Bullock, and so at the time you argued at the district court level, you pointed to Bullock, you had an opinion that supported you, but now we've got the Bullock on appeal, which didn't accept that argument. I think the Bullock case is different in a number of ways. First of all, Bullock was decided at the motion-to-dismiss phase, and so I think the crucial distinction here is that we have a case that went to a bench trial. So when you're seeking to disarm someone consistent with the Second Amendment, you need to first meet that legal threshold, which is do we have these circumstances that exist, and then you have to actually prove that the individual fits within those facts. And so in Bullock, the case was dismissed in that threshold legal proceeding at the motion-to-dismiss, but here we actually had a bench trial, and there was no evidence at all that Mr. Schnur had any actual felony convictions. Well, he ends up, he's a Category 6. No, this defendant, correct? According to the PSR. Right. But at the actual trial, there was no evidence that was submitted at all related to what felonies he had. I thought this was discussed in front of the district court, and the government says we've got so many to pick from. At the motion-to-dismiss, there was talk about his prior felonies, and I think that, I would even concede that on the order to the motion-to-dismiss, the district court, in a footnote, said that he cites felonies. I think those must have come maybe from the district court. Did you ask for a bill of particulars to say which one are you relying on? We did not. But I still think that that motion-to-dismiss standard is different than the beyond a reasonable doubt that must be proven at trial. So what's your argument, that there wasn't a qualifying predicate, or that the history, even if it was done by the district court, it wasn't done by the government, and that's reversible error? Really, the latter. But if it's the latter, then why wouldn't it be harmless once the district court said, well, here's the history for you? Because, well, I think the district court first didn't conduct the appropriate history, and even if it had conducted the appropriate history, that was only that legal threshold. So it was still the government's burden to produce evidence that Mr. Schnurr fit within those circumstances. And it didn't. It stipulated to the facts, or excuse me, it stipulated to the elements of G-1. Are you making a sufficiency argument? I am. Okay. So your argument, I didn't pull this out of the brief, your argument is that you made a Rule 29 challenge at a bench trial that the historical evidence hadn't been shown. So this really comes down to this sort of odd distinction between evidence and law. Yes. Because the district court could judicially notice law, it might even be bound by a bunch of circuit opinions now that have done the history. But you're saying, no, this is an evidentiary burden, the colonial era analog is an evidentiary burden, and there's nothing showing that that was, is that your position? That's correct. Not only the analog, which I would call the legal threshold, but also the fact that Mr. Schnurr fit within that threshold. And so I think when you have these I'm just going to interrupt because this gets a little esoteric, but it's important. Sure. So what would you say if there had been a jury trial, the jury instruction would be? What would you say a jury would have to find beyond a reasonable doubt as to, quote, history? I don't know that there would have to be a specific jury instruction as to the history, but I think that you have to have, at some point in the case, evidence of what the specific predicate felony is, because Diaz tells us that not all felonies can constitute constitutional disarmament in G1. No other circuit has said that, correct? I think that's correct. But we are bound by Diaz. And that's dicta in Diaz, isn't it? Be careful if you agree with that. I'm sorry? Is that dicta in Diaz? I don't think it's dicta in Diaz, and I think in G1. So in the First Circuit, as an as-applied challenge stands, or a conviction doesn't have sufficient evidence to support it, if, now finish the sentence, if the predicate felony identified by the government itself doesn't qualify, is that your position? That's maybe a fair reading of Diaz. This is, to me, a very difficult aspect of our case. I think so, but I think in this context, we don't even have the predicate at the trial. Well, but the government before said there are a lot, and you didn't ask for a bill of particulars, and you didn't, you know... But I still think it has to prove that beyond a reasonable doubt at the bench trial. This is different than a guilty plea context or a decision at the motion to dismiss phase. The district court can't take judicial notice of the priors? I think at the motion to dismiss, but I think that there has to be... You think? What's the best case you've cited? This is an interesting argument. I don't, and I've got a lot of cases today, so maybe I missed it. Did you really preserve a sufficiency attack? There was a Rule 29 motion... I know, but in your brief, did you say the error here is one of sufficient evidence to support the verdict? We made the argument that the government did not meet its burden of proof, and I think that the sufficiency has to be encompassed in the as-applied challenge, because the as-applied challenge is a mixed question of law and fact. We have the law, which would be those analogs that allowed for us... Right, but at the motion to dismiss, if it's in the legal world, which is honestly what I think most of the Second Amendment stuff is going towards, if it's there, all this stuff that I worried about that no justice except Justice Jackson agreed with as to who has the burden, and it's evidentiary, and it's got to be proven adversary, no court that I know of, Supreme Court or circuit, has accepted that. But I think Diaz says that we need to here. Diaz said that we need to, but it wasn't essential to the holding. But I think that the... maybe it wasn't essential to the holding, but I do think that the fact that Diaz, and I think Contreras also says this in the opinion that came out where... Now, you're admitting this guy's got burglary and battery. So under Diaz and Bullock, he does qualify. So your argument's a procedural one. No one actually tied the knot and said, here's the one. I have no reason to dispute the priors. I think Bullock is distinct in terms of Bullock did not have the same predicates that Mr. Schneer has. Battery? I think one of us had an ag assault, the other had an ag battery. They weren't the same. I can't recall specifically. Wouldn't they... under the logic of Bullock, which is pretty minimal. Likely. But I still think that you need to have that evidence beyond reasonable doubt at trial because Diaz, and again, I think it was Contreras as well, now says that there are felonies that do not fit within... or that would fit within G1 as the elements are listed, but do not allow for constitutional disarmament consistent with the Second Amendment. And so I think that with that line of cases, the government has to... Our Giglio decision did not endorse that portion of the Contreras language, correct? I'm sorry? The Giglio decision recently? I don't think so. I think it was distinct. There is a strain in our case law that's speaking about the government's burden, but how can you harmonize that with Supreme Court law that says defendants cannot collaterally attack priors in their current conviction? How could that dicta in Diaz and Contreras be correct, set against Supreme Court law? Well, I think that Supreme Court law would be pre-Bruin. And so I think if we're taking the position that any pre-Bruin law that's governing this G1 context is obsolete, then I think that we move forward with Diaz, and that's the standard... Well, there's a split on that. Diaz happens to put us on one side, which you're happy with. But a lot of circuits are saying existing law is the carve-out from Heller, right? That's correct. That's a hard split. But we are stuck on the side, which you're happy to defend. You really think that that carve-out language for felons, which was reiterated by the Supreme Court in Bruin, is not binding on circuit courts? Do you think we're right in Diaz about that? I think that if we are going to faithfully apply Bruin, I think that the Diaz decision at least gives us a pathway where we are holding the government to its burden of proof in a way that a lot of the other cases are not. And I think that that's the standard that needs to be applied here. I've asked a lot of questions of you. I'll be quiet. All right. If we buy your sufficiency of evidence argument, what's the remedy? I'm sorry? If we buy your sufficiency of evidence argument here, what's the remedy? I think the remedy is a render of acquittal and then a remand for the district court to then dismiss the indictment. Admittedly, I think it was difficult when we were asking for what to do, but I think post-Diaz, that's the only remedy that we can move forward with because we have this distinction of this world in which G-1 encompasses all of these felonies, but the Second Amendment does not allow for that constitutional disarmament of all of these felonies. So based on the record as it exists here, after jeopardy attached and the government took the strategic decision to not move forward with any kind of evidence of what any of Mr. Schneer's predicate felonies were, that based on that record, the evidence was wholly insufficient for any kind of conviction consistent with the Second Amendment, regardless of whether the district court had applied the correct historical legal threshold. And so the only way forward is to render an acquittal. So speak to whether Daniels teaches us that we're limited to the record that's amassed by the parties as distinguished from being able to look at other parts of the historical record. In what capacity with Daniels? Well, does Daniels tell us that we're limited to the record that the parties present rather than being able to go beyond that? I think it does, and I also think that, you know, with Daniels we had a bit of a different situation because in Daniels the ultimate ruling was that maybe there had been enough evidence for determination of guilt, but it hadn't actually been instructed to the jurors. This is not a jury instruction issue. This is entirely an issue of regardless of the legal threshold that the district court applied, there's insufficient evidence here based on what the government presented to allow for a constitutionally sound conviction. And so I think that Daniels does lead us to that, only outcome being that we consider what was actually before the court at trial. And based on this evidence, there was not enough evidence to lawfully convict Mr. Schnert. Let's say the government doesn't offer any evidence, but then the district court, as he did here, says, in the alternative I find the historical evidence. Reversible error? No court said that. I think that's an issue we don't have to deal with here because we had the bench trial. So you're saying he made the finding at the motion dismiss stage, but then he forgot to just say it again? I judicially noticed that there are colonial laws that support this guy as a forever banned person. I don't even think it's the matter of the district court needing to make that finding at the trial. It was the government's burden to offer any kind of evidence. You're back to the government burden, but why wouldn't it be harmless if the district court then did it? Either through judicial notice or said, oh my gosh, the Fifth Circuit's done it for me, D.S., so I'm bound. Stare decisis says this is what history was. I think regardless of the historical tradition that the district court, the work that the district court does at the motion to dismiss level, it's still the government's burden to prove that the defendant fits within those rules. Right, but if the government fails to prove something, it can be harmless beyond a reasonable doubt. So if the Fifth Circuit has already said, this history, we found it, how would that not be harmless? Because on this record, the government made this strategic decision not to offer any evidence beyond that stipulation to the elements of G1. I think there's a different issue of the fact that the historical tradition work that the district court did was wrong based on the precedent that we have now, but because this went to a bench trial, I think the judge needed to make a determination based on the evidence that was presented to it. And regardless of whether D.S. or any other precedent had said that the historical analogs were sound, the government still bore the burden of proof beyond a reasonable doubt to demonstrate that the defendant fit within those circumstances, and that's the crucial missing piece, and that's what makes the evidence insufficient to convict. To the district court below, you said, oh, we're pushing the same argument in the First and the Fourth Circuit, and you named those cases, Pentagil and Statton, whatever. What happened? I'm not sure what happened with those cases. And the other factual question I have was, was your client on probation when he was found possessing guns? He was not. He was not, so that line of authority is inapplicable. Correct. So it's purely just the other, the other, the D.S. standard. And I would say, too, I think that it's important to note that the only evidence here, beyond what we've discussed in terms of the motion to dismiss, including attorney argument and perhaps a finding by the district court about what priors may have existed, as I can only imagine perhaps came from the pretrial services report, there was no evidence here of any kinds of prior convictions actually committed by Mr. Schnur beyond the pre-sentence report. And it's also important to note, I think, that the government now only in the current... This evidentiary argument is really complex and interesting, but when I read your conclusion in your principal brief, you say the court should vacate the district court's order denying the Schur's motion to dismiss. That's what you asked for in your brief. I think that D.S. now allows for us to... Okay, you should have filed this up, I think. I'm not speaking for the panel, but the request was the one I came prepared to discuss, which is difficult and interesting, but I don't see anything about insufficiency in this principal brief. I would say that I still think it is encompassed necessarily by that as applied challenge because it's the mixed question of law and fact. If that was the case, wouldn't you have asked for the remedy of acquittal in the brief? I think we probably should have, but when we were filing the briefs, it was pre-D.S., and so I don't think that the same arguments were available to us in terms of knowing that this circuit was going to go in a direction where all felonies were not coterminous with that G-1 allowance of a constitutionally sound conviction. Well, the government may be prepared to discuss it. It's interesting. We'll see. All right, you've saved time for a vote, Ms. McInerney. Thank you. All right, you can tell me whether it's McRite or McRite. McRite, Your Honor. McRite. May it please the Court. Good morning, Your Honors. My name is Hunter McRite. With me is Gaines Cleveland, and we are representing the United States. Your Honor, I'm going to pick up on that last argument that was raised. Your Honor, they did raise a Rule 29 motion, but it did not raise a sufficiency of the evidence argument. It raised the motion to dismiss that was decided by the district court judge, and you can find that on the Record of Appeals, the trial transcript, and that is discussed on page 13 of that. In their appellate argument, what did you understand that they were arguing? Did you understand that we're making an insufficiency argument? Your Honor, I learned that this morning as well, Your Honor. I did not see that argument in the brief, nor did I see that raised on the trial transcript in the Rule 29 motion either. Your Honor, my understanding is that they were challenging the motion to dismiss argument that the judge issued. Do you have thoughts, or do you want to just stick to what was briefed? In other words, they've got a point. If they've preserved Rule 29, which you're good to tell us that they did, is there any evidence in the record to support this verdict? Your Honor, I obviously do not have that information in front of me. I do believe that the pre-sentence report lays out Mr. Schnurr's prior convictions, so I would make the argument that it is harmless there and that you can find those previous convictions there. It was also noted in the motion to dismiss that he did have multiple prior convictions. But when we assess sufficiency, we only look at the trial record, right? Yes, Your Honor, and I'm not prepared for that argument here today. Your Honor, Schnurr's prior convictions include beating someone severely while brandishing a taser, stealing a wallet by force, and burglarizing a business. The founding fathers would have disarmed Schnurr. This pattern of criminality is sufficient. Okay, but I'm going to read you a line from Diaz. Quote, not all felons would have been considered felons at founding. Then the court went on to explicitly say with different predicates it might be a different assessment. Yes. So in the Fifth Circuit, do you feel that that's just dicta or does the government have to specify the qualifying predicate? Because you just said he's got a bunch. But wouldn't you have to say this is the one that qualifies if Diaz says not all ones do? Your Honor, we did discuss at the motion to dismiss that he did have this aggravated battery conviction, he did have this robbery conviction, and he did have this burglary conviction. And I think under Diaz you have to look at, I think Diaz and Bullock probably hold and determine that his prior convictions are within the history. You keep saying plural. It's like a 922G. You've got to identify the gun. So which predicate? Don't you understand that if this had gone to a jury trial, you would have to say this predicate, ladies and gentlemen of the jury, qualifies. Isn't that what Diaz says or not? Yes, Your Honor, and I believe under. Well, don't agree too quickly if you think it's dicta because no other circuit goes this way. Does the government accept that in all 922G1 prosecutions, if they go to a jury they've got to prove a specific predicate qualifies? Your Honor, I believe that we do have to prove that he is a convicted felon. Well, we, yeah. And, Your Honor, I believe that both, all three of his arguments, or convictions on their own would survive a sufficient predicate for 922G1. And I think this court has found that in Diaz and in Bullock. Your Honor, starting with the Diaz, Your Honor, Mr. Snerdl was convicted of robbery and burglary. The robbery was when he stole a wallet. He stole that wallet by force. He used a beer bottle and took it from a victim in its context. Your Honor, he was also convicted of burglary where he broke into a store with the intent to commit theft. Your Honor, this court discussed it in length in Diaz, where a conviction for theft is a felony that would have led to capital punishment or estate forfeiture. This fits squarely within the historical traditions of serious and permanent punishment, as this court discussed in Diaz. Your Honor, his convictions are more severe than stealing the car. But what's his least violent? Because he had a lot of convictions. What's his least violent? Your Honor, he does have less serious ones, which could be his controlled substances violations. Which we don't yet know what the framers thought about those. So how could you assume juror unanimity? If the government throws a bunch at them, one of them wouldn't qualify under Diaz. It's not theft. It's not what felons would execute people for. Wouldn't you have to get juror unanimity as to the appropriate felony? Your Honor, I do not believe so. I believe that would be more of a legal question for the court to determine whether it fits within the historical notion of permanent disarmament. So this isn't an element that has to be proven beyond a reasonable doubt? Not that the right now we do not have to prove that his felony is within the historical traditions of disarmament to the jury. Right now we have to prove that he was a convicted felon and that it carried more than a year of imprisonment. Okay. That's how you interpret Diaz? No. I believe that Diaz requires the district court in that it becomes a legal question of that we do have to take the setback and we have to look, does this fit squarely within the historical traditions of firearm regulation? And that's resolved in a motion to dismiss state? Yes, Your Honor. But what if there's no motion to dismiss? They just go to trial? Yes, Your Honor. And then they— That would be the government's position is that they have the burden of raising that issue and then at that point the government does have the burden of proving that it does fit within the— Okay. And you didn't offer any colonial law evidence at all at the motion to dismiss stage, correct? Your Honor, I— Did you or didn't you? Did the government— I believe that we did. I believe that at that time we relied on prior Fifth Circuit presidents. Well, you were relying on pre-Bruin law. Yes, Your Honor. Okay. But Diaz has categorically said that doesn't work. Yes, Your Honor. And Diaz was decided well after this case. Right. But you're on direct appeal, so it controls. Yes, Your Honor. And that is—and we supplemented that through a 28-J letter and understanding that Diaz does control today. But, Your Honor, I think even taking Diaz, it does fit within the historical tradition. Okay. But isn't that agreeing that you committed an error? You didn't meet your burden under existing law, but you're now arguing it's harmless because you've been able to supplement. Is that the sequence? No, Your Honor. I do believe that at the time of the law that we were doing the briefings and before Diaz that we did prove our burden because we did do a historical analysis on what the law was at that time. And as this court discussed in Bullock, Your Honor, we raised how in Heller it acknowledged that there is a history or there is a precedent of convicted felons being disarmed. And we discussed the historical analysis that goes with that. I thought that was just relying on the carve-out, which multiple other circuits still do. In Heller, we're not questioning the longstanding tradition, felons are disarmed. That's not doing—I mean, maybe—I agree with the other circuits, but our binding law says we don't think that works. Haven't we said that? Yes, Your Honor. So what you argue to the district court below is not acceptable. I think based on how Diaz's came out, it is a different approach now, but that was not the law at the time. I know, but we're assessing the validity of what you did according to current law. Yes, Your Honor, and which is why we supplemented saying that still under Diaz, we do believe that permanent disarmament for Mr. Schnurr. But that's sort of their question here. When you accept it's your burden, you're just saying you can fulfill that burden at any stage, even at the circuit level. The government's position is it can give the history any time it wants. It doesn't have to do it in the adversary proceeding when historical evidence should be tested. Right? Because you're saying the evidence that now qualifies is evidence you've given to supplement. Well, Your Honor, I do believe we did discuss Bruin and we did discuss Rahimi and how the historical analogs under the surety laws and the going arm laws, we did raise those in our briefs and we did raise that in our appeal as well. We have also indicated through our 28J letters of how under Diaz and under Bullock, we are still within the historical tradition of regulating and disarming Mr. Schnurr. And I believe that's evidence by his prior convictions. You keep speaking about them collectively. Yes, Your Honor. But if some wouldn't count and some would count, if the government never particularized, it sure sounds to me we're doing a harmlessness finding because that wouldn't work at a trial to a jury. You couldn't have half of them agree on a qualifying predicate and another half agree on non-qualifying and somehow get a unanimous jury verdict. No, Your Honor. I think if you looked at his robbery conviction where he stole a wallet by force, I believe under Diaz, as this court discussed, that would be a proper predicate conviction. Yes, I agree. I also believe that if you individually took his burglary by itself, that would be a proper conviction under 922G1. I also believe that under Bullock, if you took his aggravated battery on its own, those are – that itself would be enough to – I think you're right. But, boy, those are a bunch of different standards. So under Bullock, if you can find one that shows he was really dangerous, that works. Under Diaz, if you can find one that has equivalency to what framers would have executed people, that works. Those are very different tests. Yes, Your Honor. But as this court discussed in Bullock, we are now where we have to take a step back and look at the historical analysis for that conviction. And I believe that for Mr. Snurr's situation as what we're here for today is that his robbery on its own would be enough, his burglary on its own would be enough, as would his aggravated battery. Because, as this court discussed, regarding the thefts, both his robbery and burglary, not together but separate, both contain the component of theft. And, Your Honor, as Bruin explained, a challenge regulation, it doesn't have to be the exact same. It doesn't have to be the exact same as the stolen. No, I think you're right. Under both, those count. And I'm just – in all these questions, I'm just waiting for someone, the government, the defense, our court, to tell district courts what the pattern instruction is. Most of these people are not going to go to bench trials. They're going to go to trial. What in the world do we tell juries as to the predicates? What do the juries have to find unanimously? Your Honor, I think for the jury's sake, I think they have to find that he was convicted felon. That unpunishment up to a year or for a year. That's it? So even a tax felony? I believe the way that DS shapes it, it turns into a legal question that is going to have to be raised by – on a motion to dismiss or through a legal question for the judge. As to each predicate, not collectively for all felony convictions. Your Honor, I believe that you can do it for each individual one, but I also think, as this court recently discussed in Juarez, that you can also look at it as together. Our historical approach has been, such as talked about in Juarez, is when you have an individual who continually commits crimes or is a recidivism, they treat each conviction more and more serious. And you can take Mr. Schnurr's convictions where he has 13 criminal history points and falls into a Category 6 where he has numerous prior felonies. That itself would also fit within the historical tradition of disarmament. And so I think you can look at them. I think the robbery, the burglary, and the aggravated battery would all fit on their own under the way the law is now as prior – or as predicates under 922G1 for permanent disarmament. But I also think you can take his criminal history as a whole and look at this as an individual that continually is committing violent crimes. He's continually committing crimes. And historically, those individuals have been treated more and more severely, which would fit within the nation's historical traditions of disarmament. And, Your Honor, I do think we also – as this court discussed in Bullock, you were looking at – because history, there is not an aggravated battery. So you have to look at how assault and battery were handled. You have to look – and historically, those were handled depending on the severity of that offense. The punishment depended on how severe. And with Mr. Schnurr's prior aggravated battery where he caused great bodily harm, we are talking about the utmost of severe. This is a situation in which Mr. Schnurr left an individual in the hospital. He beat them severely. He left them with swollen eyes. He left them with a bloody mouth, a bloody nose, and a bloody lip. This is also a beating – Now what you're doing is you're litigating. You're arguing to us the facts of a prior event. Yes, Your Honor. Am I wrong that the Supreme Court has said that isn't what you have to do in a current 922G? No one has to defend or argue the facts of an earlier conviction. No, Your Honor. But I do think, as this court discussed in Bullock, you have to look at the dangerousness of that – well, not even the dangerousness, but how severe this is. And that's how historically assault and batteries have been handled. It's the present dangerousness of the individual possessing the gun. It's his historical dangerousness or it's the inherent dangerousness of the predicate. When we look to see if a guy defendant is dangerous, as of what moment? Your Honor, I think it can both be his present dangerous or you can use the evidence of his prior dangerous as he is evidenced by – through his robbery where he stole a wallet by force, a burglary where he broke into a store. I also think – So a tax felon that in his current life, 404B, is a really dangerous person, he would qualify. I'm sorry, Your Honor. Where the predicate is just sort of nonviolent, white-collar offenses, but 404B shows he's presently a dangerous guy, right? Wife, battery, whatever it is. The government could bring – get a conviction? The jury would hold you can look at how dangerous he is today? No, Your Honor. It has to attach to the predicate? Your Honor, I think the way the court has laid this out in Diaz is you have to look at his prior conviction. And I believe, as the court discussed in Bullock, is when his convictions constitute dangerous and violent crimes, such as the aggravated battery in this case where he did severely beat somebody, I do think you have to look at the facts of those prior convictions to determine what – Has any other circuit interpreted 922G this way? No, Your Honor. Not that I'm aware of. You say that because you're responsibly adhering to our law. What's the circuit landscape out there about 922G1 right now? Are there mature splits or not? Your Honor, I don't – I'm not familiar with that at this moment. Okay, well, aren't you aware that circuits have said the carve-out still is controlling law? All felons in possession. Other circuits have said that? Yes, Your Honor. Okay, so there's a hard split on that issue. There is, Your Honor. But I think we have to look at this as this court has held in Diaz, which is where we're at with the law here. And so I do think, based on that, we have to look at the actual facts of those prior convictions because obviously his burglary and his robbery is more severe than a typical petty theft. But as this court talked about in Diaz, those are more in line with the seriousness of stealing a car or back historically of stealing a cattle. You have an individual who by force took a wallet, a wallet in its contents, which could contain an ID. That could contain credit cards, debit cards. That could contain money. And that can contain – that can allow access to that person's personal information, to their life, their finances. And I believe that falls more on the severe side, as this court discussed in Diaz, which it does fall well under the permanent and serious punishment, which falls under permanent disarmament. Just as I believe that the aggravated battery falls under the more severe, as this court discussed in Diaz – or in Bullock, where this – his conviction of the aggravated battery that caused great bodily harm constitutes a dangerous and violent crime, which historically fits in the tradition of firearms regulation. I also believe that if you take his convictions together, that also shows that his criminal history would fit under the historical traditions of firearms regulation. Because as historically we have always treated individuals who continue to commit crime, they get treated more severely. And Mr. Schnur's criminal history is a – has multiple prior felony convictions, including violent felony convictions such as the robbery and the aggravated battery. And so I do think those fit under the historical traditions of firearms regulations, as this court has laid out in Diaz. And for those reasons, Your Honors, we would ask that the judgment be affirmed. So I'll ask you the same question that I asked Ms. McIntyre, and that is under our opinion in Daniel's – and this is the second Daniel's opinion, and it was issued on January 6th. And the quote is, following the principle of party presentation, we generally limit ourselves to the record amassed by the district court and the parties. This speaks, of course, to whether the historical tradition has to be presented by the parties or whether the court can go beyond that to find other evidence of the historical tradition. By the way, this cited – it didn't quote, but it cited the Sinanang Smith case, which, as you know, deals with the party presentation principle. So this is a long-winded question, but what is the government's position on whether we're limited to the historical evidence presented by the parties? Your Honor, I believe that we are – I believe that those historical analyses were raised through the briefs, and I believe that the district court judge also did a historical analysis to look at whether this does fall in the historical traditions of firearm regulations. But I think because this is a legal question, you have – we are allowed to look outside of just what is in the – we are allowed to look at additional context to look to see whether it does fit under the historical analysis as this court has laid out in DS. Thank you. All right. Thank you, Mr. McCryde. And Ms. McIntyre for rebuttal. The circumstances all outlined by the government about the characteristics of the underlying felonies, the alleged dangerousness, the alleged likelihood of recidivism, none of those are of actual record here. Those all come from the PSR. And so none of that was ever brought up. Even in the context of the motion to dismiss, it would be entirely inappropriate to look to the PSR in a case where you had a bench trial to then use evidence that was inadmissible at trial is largely hearsay in which the defense cannot rebut beyond showing that it lacks sufficient indicia of liability. But this does get back to did you preserve the argument, right? If you preserved a general Rule 29, but you didn't say, hey, district court, I know we talked all about this at the motion to dismiss. You made a finding. We now are asking you to show the evidence again. I still think the distinction here is that the government, regardless of what happened at the motion to dismiss, the government had to produce some kind of proof, whether it be the dangerousness, which I don't think is the standard in this circuit, or whether it be anything related to that specific predicate felony, any of the felonies. And it didn't do that. And I think that was a strategic decision. Throughout, the government took the position. But I'm going to be difficult to you. Why wouldn't we refuse to consider this at all if you made a strategic decision to attack this on appeal differently? Right? You heard him. He just didn't even have a way to respond to the evidentiary points. Now? Yeah, just now on appeal. He wasn't expecting this. There is an element of the brief that discusses the fact that the government failed to meet its burden of proof. And I still think that the sufficiency is encompassed within that as applied challenge, because you have the legal issue. We usually look at the decree, the relief you ask for, and it says legal error, motion to dismiss. That's what it says. It doesn't say render because insufficient evidence. That's a very big difference. Even if this court is unwilling to consider the sufficiency argument, I think then you go back to the fact that the historical tradition work that was done was not done according to the correct— And by that you mean the correct meaning the government had the burden. The government had the burden. He says he offered the evidence. There was no offering of evidence, at least in our estimation. There was no—and I looked back at their motion. There was no response at all about any kind of offering. I guess what he—I think what the government is saying, well, we relied on pre-Bruin law, that is Heller, and Heller just said in a sentence that it is longstanding that felons are disarmable forever. And therefore, Heller did the history work, and it's all over. But at the point that the— That's been rebutted by Diaz, right? Correct. And I think even at the point that the motion to dismiss was considered, albeit now the decision has changed, but the government had the benefit of Daniels 1. The government had the benefit of Rahimi 1, which said that all pre-Bruin precedent was obsolete. And so it was clearly a strategic decision that the government was making because the law of this circuit at the time held that all of that pre-Bruin law was not— And if we are, I think, appropriately just focusing on the district court's decision not to dismiss, it did make the alternative finding. There is historical evidence. It made that. So then—right? But the finding that it made wasn't based on the appropriate test that now exists in this circuit. I think the opinion itself, it discusses—it first seemingly talks about the fact that felons do not—are not afforded Second Amendment rights. And then it says, regardless, we'll—I'm going to think about some historical analogs. But it doesn't actually do the work of addressing any of the felonies or any nation, any historic tradition that could actually support the disarmament of certain felonies. There's no work in terms of— Your time's running out, but I guess you heard him simplify his argument to one that seems strong to me, which is he wins twice. He wins under Bullock or he wins under Diaz because they've got those predicates. They are there, and we've already said those count. The predicates still need to be proven at the jury—at the bench trial level. I know, but that's shifting back to the sufficiency argument. And speaking about the Bullock piece, in Bullock, at the motion to dismiss, there was a lengthy hearing about the discussion of Bullock's priors. I don't think anyone—there was no evidence whatsoever that Jesse Bullock, whose convictions were over 20 years ago, was dangerous at the time. But there was a lengthy discussion about the, quote, deadly bar fight that I think is referenced in the opinion as it related to the circumstances that could potentially disarm Mr. Bullock. That was not here. There was no discussion by the government, no evidence offered at all about the circumstances of any of the prior convictions, let alone what they were. And again, I think that the only place that we can look to for those convictions now comes from the PSR, which is inadmissible evidence at trial. And also, the only evidence that was presented to the district court at the motion to dismiss— Did you dispute any of the PSR? Did you file an objection to those? I don't believe we did. But I don't think we had the same incentive at that time either. It ends up sounding a lot like the arguments that we had about the modified categorical approach, didn't it? Yeah, it does. All right. Thank you, Ms. McIntyre. Thank you. Your case is under submission.